# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## No. 23-12680

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

VICTOR NATSON

*Defendant-Appellant.*

Appeal from the United States District Court for the Southern
District of Georgia

No. **4:17-cr-00050**

---

## APPELLANT'S OPENING BRIEF

---

JAMES WRIXAM McILVAINE
Attorney for Natson
Georgia Bar No.: 436879

WILLIAMS LITIGATION GROUP
1709 Reynolds Street
Brunswick, Georgia 31520
(912) 208-3721
wrix@williamslg.com

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | )     No. 23-12680 |
| | ) |
| VICTOR NATSON, | ) |
| | ) |
| Defendant-Appellant. | ) |

## CERTIFICATE OF INTERESTED PERSONS
## AND
## CORPORATE DISCLOSURE STATEMENT

COMES NOW the VICTOR NATSON, by and through counsel, and files

his Certificate of Interested Persons and Corporate Disclosure Statement as follows;

James Wrixam McIlvaine, Attorney for Appellant,

Hon. Lisa Godbey Wood, District Court Judge

Gilluly, Gregory E.,  Assistant United States Attorney

Harper, John, Assistant United States Attorney

Hertzberg, Theodore, Assistant United States Attorney

Howard ,Christopher, Assistant United States Attorney

Knoche, Karl, Assistant United States Attorney

C-1 of 2

Stuchell, James, Assistant United States Attorney

Christine, Bobby L., former United States Attorney

Cunningham, Xavier Aloysius, Assistant United States Attorney

Davids, Justin G., Assistant United States Attorney

Durham, James D., former First Assistant United States Attorney

Estes, David H., former Acting United States Attorney

Steinberg, Jill, United States Attorney for the Southern District

**No publicly traded company or corporation has an interest in the outcome of this case or appeal.**

This 15th day of November, 2023.

Respectfully submitted,

*/s/ Wrix McIlvaine*

 James Wrixam McIlvaine
Attorney for Victor Natson
Georgia Bar No.: 436879

WILLIAMS LITIGATION GROUP
1709 Reynolds Street
Brunswick, Georgia 31520
(912) 208-3721
wrix@williamslg.com

C2 of 2

## Statement Regarding Oral Argument

Oral Argument is not desired.

# Table Of Contents

**Page**

Certificate of Interested Persons and Corporate Disclosure Statement .................C-1

Statement Regarding Oral Argument ...........................................................................i

Table of Contents.................................................................................................. ii

Table of Citations ............................................................................................... iii

Jurisdictional Statement.......................................................................................iv

State of the Issues…………………………………………………………………… v

Statement of the Case…………………………………………………………… 1

Summary of the Argument……………………………………………………… 7

Argument………………………………………………………………….. 10

ISSUE 1 – Hobbs Act Robbery is not a Crime of Violence for 924 (c)………….. 10

ISSUE 2 – Hobbs Act Robbery in Count 2 as Charged to the jury is not a Crime of

Violence For purposes of 924 (c)…………………………………….. 22

Conclusion……………………………………………………………… 40

Certificate Of Compliance [if required by FRAP 32(g)] ..........................................42

Certificate Of Service [if required by FRAP 25(d)] ...................................................43

**Table of Citations**

**Cases**                                                      **Page(s)**

In Re Saint Fleur, 824 F. 3d 1337 (11th Cir. 2016)…………………6, 10, 13, 16, 19,    *
20, 24, 33, 34

United States v. Taylor, 142 S. Ct. 2015 (2022)…………….5, 10, 11, 13,14, 22, 29,    *
30
United States v. Scott, 798 F. App'x 391, 396-97 (11th Cir. 2019)………………..4

United States v. Louis, No. 21-CR-20252, 2023 U.S. Dist. Lexis 32231, at 5*6 (S.D.    *
Fla. Feb 27, 2023)…………………………………………………7, 21, 25, 27, 29

Eleventh Circuit Case No.: 23-10643…………………………………………………7    *

Curtis Johnson v. United States, 559 U.S. 133, 139 (2010)…………….8, 16, 19, 31    *

United States vs. McGuire, 706 F. 3d 1333 (11th Cir. 2013)……………………9, 19    *

Davenport v. United States, No. 16-15939-G, 2017 U.S. App. Lxis 11782, at 6*9    *
(11th Cir. Mar. 28, 2017)………………………………………………..9, 11, 15, 17, 30

United States v. Grace, 711 F. App'x 495, 503 (11th Cir. 2017)………………..10, 20    *

United States v. Llanos-Agostadero, 486 F. 3d. 1194, 1196 (11th Cir. 2007)……..12

Leocal v. Ashcroft, 543 U.S. 1, 9 (2004)…………………………………………12, 14

Borden v. United States, 141 S. Ct. 1817 ( 2021)…………………………………14

United States v. Davis, 139 S. Ct. 2319, 2336 (2019)…………………………..21, 39    *

Mathis v. United States, 136 S. Ct. 2243 ( 2016)………………………………15, 16

*Richardson v. United States*, 526 U.S. 813, 817 (1999)……………………………16

*In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015)………………………………17

*United States v. Duhart*, 803 F. App'x 267, 271 (11th Cir. 2020)…………………17

*Doster v. United States,* No. 16-22677-CIV-MOORE, 2018 U.S. Dist. LEXIS 34526, at *32-33 (S.D. Fla. Mar. 1, 2018……………………………………………………18

*United States v. Gooch*, 850 F.3d 285, 2017 WL 816882, at *5 (6th Cir. 2017)….18

*United States v. Buck*, 847 F.3d 267, 275 (5th Cir. 2017)………………………18

*United States v. Anglin*, 846 F.3d 954, 965 (7th Cir. 2017)………………………18

*United States v. House*, 825 F.3d 381, 387 (8th Cir. 2016)………………………18

*United States v. Howard*, 650 F. App'x 466, 468 (9th Cir. 2016)…………………19

*United States v. St. Hubert*, 909 F.3d 335, 346 (11th Cir. 2018)…………………..21

*Brown v. United States*, 942 F.3d 1069, 1075 (11th Cir. 2019)……………………21

*Ovalles v. United States*, 861 F.3d 1257 (11th Cir. 2017)…………………………..21

United States v. Lias, 173 F. 2 685, 1949 U.S. App. Lexis 2886 (4th Cir. 1949)……32

*United States v. Collins*, No. 1:14-CR-302-TWT-AJB, 2016 U.S. Dist. LEXIS 54816, at *78-82 (N.D. Ga. Feb. 9, 2016)……………………………………………………35

*Wooten v. United States*, No. 16-22595-Civ- COOKE/TORRES, 2018 U.S. Dist. LEXIS 50969, at *12-21 (S.D. Fla. Mar. 26, 2018)…………………………………35

United States v. Frazier, No. 2:15-cr-044-GMN-GWF, 2016 U.S. Dist. LEXIS 103388, at *9 (D. Nev. May 20, 2016)…………………………………………………...36

**Statutes**

18 U.S.C. § 924 (c) ………………….. 1, 5, 6, 8, 9, 11, 12, 13, 14, 15, 16, 17, 23, 34, 40    *

18 U.S.C. § 1951 …………………………………………………………… 1, 22

28 U.S.C. § 2255…………………………………………………… 5, 11, 16, 18

18 U.S.C. § 3231 ...........................................................................................23

F.R.C.P 12 (b)…………………………………………………………...32

**Other**

The Eleventh Circuit Pattern Jury Instruction O70.3……………………………….22    *

## Jurisdictional Statement

The District Court for the Southern District of Georgia was the proper trial court for the offenses of conviction, because these offenses involved conduct under the Hobbs Act and 924 (c) that occurred within Savannah, Chatham County, Georgia – a geographical location within the Southern District of Georgia.

The Court of Appeals for the Eleventh Circuit is the proper court for this appeal because this appeal is of a final conviction and sentence entered against the Defendant in the Southern District of Georgia. The Southern District of Georgia is within the confines of the Eleventh Circuit and all direct appeals from the various District Courts within Florida, Alabama and Georgia shall be heard in the Eleventh Circuit Court of Appeals. Victor Natson was convicted by a jury in the Southern District of Georgia and appeals the final judgment in his case. This is a direct appeal and it is properly filed in the Eleventh Circuit Court of Appeals.

Notice of Appeal was timely filed within 14 days of the District Court entering final judgement in this case. The judgment was filed on August 7th, 2023 and the Notice of Appeal was filed on August 8th, 2023. See Doc 419 and Doc 420. The transcript of his sentencing hearing was also ordered on August 8th, 2023. See Doc. 421.

All other relevant transcripts had been previously ordered and are part of the record. The original docketing notice for this case set the due date for Appellant's brief on October 16th, 2023. The Defendant timely requested an extension which was granted by the clerk with a new due date of November 15th, 2023. This Opening Brief of Appellant is timely filed, on November 15th, 2023. This is a direct appeal from the final judgment and sentence of the Defendant in a criminal case tried in the Southern District of Georgia.

Wherefore, jurisdiction and venue are proper within the Eleventh Circuit Court of Appeals.

## Statement of the Issue(s)

**I.**     **Should Hobbs Act Robbery still be considered a Categorical crime of violence under 18 U.S.C. 924 (C) and under *In re Saint Fleur*, 824 F.3d 1337 (11th Cir. 2016) and its progeny after *United States v. Taylor*, 142 S. Ct. 2015, 2024 (2022)?**

**II.**     **Should Hobbs Act Robbery still be considered a Categorical crime of violence under 18 U.S.C. 924 (C) after trial and conviction predicated upon use of the Eleventh Circuit Pattivern Jury instructions?**

**Statement of the Case**

*Background*

    I.    <u>Indictment.</u>

The grand jury indicted Natson, Gregory Plair, and Joshua Scott on seven crimes stemming from two armed robberies. The superseding indictment named Natson in five counts. Count 1 alleged that, from October 14, 2016 through January 30, 2017, Natson conspired with the other two defendants to interfere with interstate commerce by robbing Brink's, Inc., an armored-car transportation service, in violation of 18 U.S.C. § 1951(a). Count 2 charged that, on October 14, 2016, Natson and the others, aided and abetted by each other, interfered with interstate commerce by robbing two Brink's employees, in violation of 18 U.S.C. §§ 1951(a) and 2. Count 3 alleged that Natson and the others, aided and abetted by each other, knowingly used, carried, brandished, and discharged firearms during and in relation to the crime of violence charged in Count 2, in violation of 18 U.S.C. §§ 924(c) and 2. Count 5 charged that, on January 30, 2017, Natson and the others, aided and abetted by each other, attempted to interfere with interstate commerce by attempting to rob two Brink's employees, in violation of 18 U.S.C. §§ 1951(a).

Count 6 alleged that Natson and the others, aided and abetted by each other, knowingly used, carried, and brandished firearms during and in relation to the

crime of violence charged in Count 5, in violation of 18 U.S.C. §§ 924(c).  See Doc. 42.

II.    Trial.

Plair pleaded guilty to three counts and testified at trial.  Doc. 85.  Natson and Scott put the government to its burden at a jury trial.  Over the four-day trial, the government established their guilt through 20 witnesses and 58 exhibits.

III.    Facts Established at Trial

Brink's, Inc. is an international corporation that uses armored trucks to transport large amounts of cash and expensive goods for its customers, including banks and large retailers.  (Trial Transcript ("TT") 612–13.)[1]  For two years, Natson worked at Brink's as both a driver and a messenger.  (TT 615–16, 618.) During his employment, Natson learned all about Brink's armored trucks in Savannah, including their routes, times, and the personalities of their drivers and passengers.

While working at Brink's, Natson approached Plair about robbing one of its armored trucks.  Natson told Plair how much money Brink's had and how easy it would be to pull off the robbery.  Natson kept pitching the idea to Plair through the summer of 2016 by sending him pictures of all the cash in the armored trucks.

---

[1] The trial transcript spans 832 consecutively numbered pages in the record at Docs. 218–221.

2

(TT 462–64, 545.)

Natson and Plair discussed using guns in the robbery. (TT 468.) Natson focused on one particular Brink's route because he knew the characteristics and mannerisms of the driver and messenger assigned to that route. Specifically, Natson said that the driver and messenger would cooperate during the robbery if Plair just applied a little pressure by using a gun to convince them to hand over the money. (TT 464, 468.) For that reason, Plair recruited the participation of Scott, who had guns. (TT 468–69.)

Natson again described the driver and messenger of the armored truck they were targeting. Natson told Scott and Plair that the man with dreadlocks "was really soft and if you put a gun on him he would give it up." The other man, an older white guy, had previously told Natson that he was planning on quitting the job and "that if he was ever to get robbed, he would give it up." (TT 472–73.)

On October 14, 2016, Natson, Scott, and Plair robbed a Brink's armored truck at a SunTrust ATM. (TT 459, 462, 474.) Natson drove Scott and Plair to the site.

Natson knew that Scott and Plair were armed with loaded guns when they got in his car. Natson dropped off Scott and Plair a short distance from the ATM. (TT 474–76, 549.) Scott and Plair drew their guns and approached the Brink's employee with dreadlocks, who immediately ran inside the bank. (TT 477–79, 605.) Scott and Plair grabbed as much money as they could, and Scott discharged

his gun. (TT 480–81, 485, 605.)  Scott and Plair ran into a nearby wooded area and called Natson, who picked them up in his car. (TT 478, 481, 553.)

The jury convicted Natson on all counts.  As to Count 3, it specifically found that the defendants brandished and discharged a firearm.  The jury found Scott guilty on counts one, five, and six. (Doc. 196.)

IV.    Postconviction Matters.

Natson filed a motion for judgment of acquittal.  As to Count 3, he argued that the evidence was insufficient because he was not present during the actual robbery and did not actively participate in it.  As to Count 2, he did not argue either that the instructions were deficient or that it did not constitute a crime of violence under 18 U.S.C. § 924(c). (Doc. 202.)  This Court denied his motion. (Doc. 240.)

This Court sentenced Natson to 240 months: 36 concurrent months as to each of Counts 1, 2, and 5; 120 consecutive months as to Count 3; and 84 consecutive months as to Count 6. (Doc. 261.)

On direct appeal, Natson's sole argument was that his convictions on Counts 3 and 6 were invalid because the government supposedly failed to prove that he had advance knowledge that his codefendants would use a firearm during the robberies.

The Eleventh Circuit rejected that argument and affirmed Natson's convictions. See United States v. Scott, 798 F. App'x 391, 396–97 (11th Cir.

4

2019).

V.     Pro Se Motion to Vacate

In June 2022, the Supreme Court held that attempted Hobbs Act robbery does not qualify as a predicate "crime of violence" under 18 U.S.C. § 924(c).  See United States v. Taylor, 142 S. Ct. 2015, 2022 (2022).  Invoking Taylor, Natson filed a 28 U.S.C. § 2255 motion to vacate his conviction on Count 6 because it was predicated on the attempted Hobbs Act robbery in Count 5.  (Docs. 336, 342.)  The government conceded that Natson was entitled to that relief.  (Doc. 344.)  The District Court granted Natson's motion to vacate Count 6.  (Doc. 350.)

VI.     Re-sentencing

Natson was appointed new counsel to assist him at sentencing and a new presentencing report was completed based on his successful 28 U.S.C. § 2255 motion.

By and through counsel, Natson filed an objection to the initial presentence report and a motion in arrest of judgment or to dismiss Count 3 of the indictment.  See Docs  377 and 378.  The Court ultimately denied Natson's motion  ( Doc. 378) and overruled his objection to the presentence report ( Doc. 377), see Doc 416.  Natson proceeded to sentencing and preserved his objection and took exception to the Court's ruling at said hearing, see Doc 425.  The Court then held a sentencing hearing ( See Docs 417, 418 and 425) and entered a final amended

5

judgment on August 7th, 2023. See Doc. 419.

VII.    <u>This Appeal</u>

Natson brings this appeal on two grounds.  Natson believes that the Eleventh Circuit can no longer place Hobbs Act Robbery as a categorical crime of violence after the decision in Taylor because there are situations under the elements of the statute itself which would not qualify as a crime of violence.  This ground has been raised by other appellants but it is hereby raised again as the problematic decision in *In re Saint Fleur,* 824 F.3d 1337 (11th Cir. 2016) must be revisited by this Court. This Court has ruled before that *In Re Saint Fleur* must be reviewed en banc but it does not appear that any appellant has taken it that far after *Taylor*.

What is novel and interesting on this appeal is that Natson asserts that the jury charges utilized in his jury trial were overbroad and that under the categorical approach mandated by the Eleventh Circuit and the Supreme Court, his conviction in Count 3 should be vacated because the jury was authorized to find Natson guilty of Hobbs Act robbery under circumstances that would not constitute a crime of violence for purposes of 924 (c).

He is not the first to present the issue to this Court as the Government brought it before the Court on an appeal out of the Southern District of Florida earlier this year where a district court judge vacated a large number of 924 (c) convictions of a defendant on the same grounds presented here.  However, this Court is not yet in

6

position to rule on the matter because the government decided to avoid Eleventh Circuit precedent on the issue and filed a motion to dismiss its appeal for "prudential" reasons before any briefs were filed.  See *United States v. Louis*, No. 21-CR-20252, 2023 U.S. Dist. LEXIS 32231, at *5-6 (S.D. Fla. Feb. 27, 2023) and Eleventh Circuit case No.: 23-10643.  This Court has not yet granted the government's motion to dismiss in that matter, but their motion was filed on September 13th, 2023 and no briefing schedule has issued in that docketed appeal.

**Natson is currently incarcerated and serving his sentence at FCI Coleman.**

### Summary of the Argument

The United States Supreme Court has held that the term "physical force" as used in § 924(c)(3)(A) requires "<u>violent force</u>" which means "strong physical force" or "force capable of causing physical pain or injury to another person." *Curtis Johnson v. United States*, 559 U.S. 133, 139 (2010).

In any particular case, a defendant's crime of conviction may have involved "violent force" as described and defined by the Supreme Court. Certainly, the case and admitted evidence against Natson, shows that violent force or the threat of same was utilized to commit Hobbs Act Robbery as to Count 2.  The jury was authorized and did in fact lawfully convict Natson of Counts 1 and 5 as well, which also

involved allegations of violence and/or threats of violence.  Natson concedes that the evidence at trial presented a factual basis for his convictions on Counts 1, 2, and 5 and raises no dispute with those facts for purposes of this appeal.

However, the actual facts relied upon by the jury to convict the Defendant have no legal relevance in determining whether the crime he was convicted of in Count 2 is a "crime of violence" under the elements clause of § 924(c). The question for this Court in determining whether the elements clause of § 924(c) may be predicated upon Count 2 must be answered categorically, by reference to the elements of the offense as opposed to the actual facts and circumstances presented at trial.  *See United States v. McGuire*, 706 F.3d 1333, 1336 (11th Cir. 2013).

The Eleventh Circuit jury instructions utilized in Natson's case impermissibly expanded the elements of the  offense charged in Count 2 such that this Court must vacate his conviction on Count 3. Pursuant to the categorical approach, if Hobbs Act robbery can be committed <u>without</u> "the use, attempted use, or threatened use of physical force," then that crime obviously cannot possess "as an element the use, attempted use, or threatened use of physical force" under the categorical analysis required to be undertaken by this Court in  determining  what qualifies as a predicate offense under 18 U.S.C. §§ 924(c). See *Davenport v. United States*, No. 16-15939-G, 2017 U.S. App. LEXIS 11782, at *6-9 (11th Cir. Mar. 28, 2017).

8

In applying the categorial approach, the Court must look at the Hobbs Act robbery statute, the elements that must be proved, and also must decide as to the various means by which such a robbery may be committed. Natson will demonstrate that Eleventh Circuit binding precedent, all based on *In re Saint Fleur,* 824 F.3d 1337 (11th Cir. 2016), is erroneous and not based on the required Categorical Approach as mandated by the Supreme Court.

This Court has said the question of the propriety of *In Re Saint Fleur* can only be reviewed en banc, but that precedent must be revisited pursuant to the decision in *Taylor*.[2] But no Eleventh Circuit panel has addressed the question of whether the elements and means of Hobbs Act Robbery as instructed and considered by the jury, using Eleventh Circuit Pattern Instructions, have impermissibly expanded the elements and means of Hobbs Act Robbery such that a conviction based on same is subject to dismissal for lack of jurisdiction. One District Court, as mentioned, has issued a decision in the wake of *United States v. Taylor*, 142 S. Ct. 2015, 2024 (2022), which presents persuasive authority that the conviction in Count 3 of this case should be vacated.[3]

---

[2] As even some Eleventh Circuit Panels have opined, they themselves are bound by *Saint Fleur* regardless of the propriety of same, and so that issue may only apparently only be reviewed *en banc* or at the Supreme Court of the United States. See *In United States v. Grace*, 711 F. App'x 495, 503 (11th Cir. 2017).

[3] See *United States v. Louis*, No. 21-CR-20252, 2023 U.S. Dist. LEXIS 32231, at *5-6 (S.D. Fla. Feb. 27, 2023) and Eleventh Circuit case No.: 23-10643.

## ARGUMENT

### I.  Hobbs Act Robbery is not a Categorical crime of violence under 18 U.S.C. 924(C) and under *In re Saint Fleur*, 824 F.3d 1337 (11th Cir. 2016) and its progeny after *United States v. Taylor*, 142 S. Ct. 2015, 2024 (2022).

The Supreme Court mandated the categorical approach to Hobbs Act Robbery when looking at qualifying offenses under 18 USC § 924(c).  While the Eleventh Circuit had already put the government, defendants and this Court on notice that it was moving towards a strict categorical approach in *Davenport v. United States*, 2017 U.S. App. Lexis 11782 (11th Cir. 2017), the Supreme Court has now definitively mandated such an approach.[4]

*Taylor* dealt with an attempted Hobbs act robbery, and this was seized upon by Natson in his successful *pro se* 18 USC § 2255 which brought about appointment of undersigned and the Court's vacated judgment and the Defendant's amended sentence and amended final judgment.  However, the ramifications of Taylor are far greater than mere categorical views of "attempted" Hobbs act robberies and the problem of figuring out whether a substantial step was violent or something benign and not within the ambit of 18 USC § 924(c) as the Court agreed in vacating the conviction in Count 6 of this case. The Eleventh Circuit's narrow view of the import of the *Taylor* decision is erroneous.  The dicta in that decision

---

[4] *United States v. Taylor*, 142 S. Ct. 2015 (2022)

is instructive of the larger picture.

## A CONVICTION FOR HOBBS ACT ROBBERY DOES NOT REQUIRE AN ELEMENT THAT QUALIFIES AS A CRIME OF VIOLENCE UNDER 18 U.S.C. §§ 924(c)

The question for the Court is a question of law rather than a question of factual analysis regarding the evidence presented to the jury at Natson's trial. See *United States v. Llanos-Agostadero,* 486 F.3d 1194, 1196 (11th Cir. 2007).

18 U.S.C. § 1951 provides the elements of Hobbs Act Robbery:

> "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both."…

> (1) "The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

> (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

When interpreting a statute, the Court must give words their "ordinary or natural" meaning. *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004)

To determine whether a federal felony qualifies as a crime of violence, § 924(c)(3)(A) doesn't ask whether the crime is *sometimes* or even *usually* associated

11

with communicated threats of force (or, for that matter, with the actual or attempted use of force). It asks whether the government must prove, as an *element* of its case, the use, attempted use, or threatened use of force. *United States v. Taylor*, 142 S. Ct. 2015, 2024 (2022)

"Congress tasked the courts with a much more straightforward job: Look at the elements of the underlying crime and ask whether they require the government to prove the use, attempted use, or threatened use of force." Id. at 2025.

Robbery as defined could be undertaken by the use, attempted use, or threatened use of force. However, robbery as defined by statute could be undertaken by *fear of injury to property in the present or future*. Additionally, the fear of future injury to property, could be the property of another person such as a property of a family member in the present or future. Property can be injured in many ways. Property could be cash. Property could be intellectual property or some other intangible asset. Property could be a tangible item located in another state or country. The statute itself, and its definition of what constitutes "robbery" removes itself, categorically, from the purview of 924 (c). The Court cannot look at the traditional trope of what is robbery and what is not. Certainly, robbery committed by generating fear of injury to property in the future does not meet the definition of common law robbery and does not constitute a crime of violence. Thus, under the very same analysis undertaken by the Supreme Court in *Taylor* in

12

analyzing whether attempted Hobbs Act Robbery is a predicate crime under the elements clause; the outcome of the Taylor case is binding precedent on this Court in spite of *Saint Fleur*.

Justice Gorsuch ominously alludes to such a result in dicta: "Whatever one might say about *completed* Hobbs Act robbery, *attempted* Hobbs Act robbery does not satisfy the elements clause." *United States v. Taylor*, 142 S. Ct. 2015, 2020, 213 L.Ed.2d 349, 357 (2022).

Congress gets the blame herein. But it is not the job of the Courts to legislate from the bench or fix sloppy and overbroad legislation. Statutes can be amended and in this case it should be, but it is not proper for the Court to abandon the categorical approach to save congressional errors.

The Eleventh Circuit stubbornly clings to *Saint Fleur* holding back the inevitable flood gates that will open sooner or later. The Court could rely on this precedent as all other District Courts have done as well as several panels of the Eleventh Circuit subsequent to that decision, with regards to whether the categorial approach excludes Hobbs Act Robbery as a crime of violence under § 924(c)(3). The *Saint Fleur* panel did declare Hobbs Act Robbery to be a crime of violence under § 924(c)(3), without citing to any authority, or undertaking the proper analysis, despite the fact that the alternative means of committing that crime should exclude it from such a definition under many decisions in other jurisdictions and this one.

13

However, with the Supreme Court declaring that Hobbs Act Robbery crimes are subject to the categorical approach, unlike the declaratory judgment approach taken by the *Saint Fleur* panel; the flood is inevitable.

The Supreme Court has determined that for any federal felony to serve as a predicate for a conviction and sentence under the elements clause, the Federal Courts must apply a "categorical approach." The court must do so because the clause poses the question whether the federal felony at issue "has *as an element* the use, attempted use, or threatened use of physical force." See § 924(c)(3)(A) (emphasis added). Answering that question does not require—in fact, it precludes—an inquiry into how any particular defendant may commit the crime. The only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force. This Court has long understood similarly worded statutes to demand similarly categorical inquiries. See, *e.g.*, *Borden* v. *United States*, 141 S. Ct. 1817 (2021); *Davis*, S. Ct. 2319, 204 L. Ed. 2d 757; *Leocal* v. *Ashcroft*, 543 U. S. 1, 7 (2004).

Despite the Eleventh Circuit panel holding in *Saint Fleur*, the Supreme Court dictates that even Hobbs Act Robbery is subject to the categorical approach. United States v. Taylor, 142 S. Ct. 2015, 2020, 213 L.Ed.2d 349, 356 (2022).

14

REASONABLE JURISTS MAY DISAGREE – BUT THE CATEGORICAL APPROACH CONTROLS THE DECISION

*Mathis v. United States*, 136 S. Ct. 2243 (2016)[5], is illustrative of what the Courts must us do when faced with an alternatively phrased statute.

The Supreme Court held in that case that the first task for a sentencing court is to determine whether its listed items are <u>elements</u> or <u>means</u> in a categorical analysis.

The Eleventh Circuit concurrence in *Davenport v. United States,* No. 16-15939- G, 2017 U.S. App. LEXIS 11782, at *8-9 (11th Cir. Mar. 28, 2017) suggested for the first time how Mathis should be applied to a § 924(c) analysis as we have at issue in this case.

Circuit Judge Mathis opined that if the listed items analyzed by the Court are elements, the court should review the record materials to discover which of the

enumerated alternatives played a part in the defendant's conviction ( that forms the basis for applying § 924(c)) and then compare that element along with all others. However, he further elaborated that if the alternatives are means, that the court has

---

[5] "<u>Mathis</u> examined the distinction between the elements which define a crime and the means by which it can be committed in reference to a statute's use of the word "burglary." But this distinction may be even more significant for § 924(c)'s "elements clause." See *Davenport v. United States*, No. 16-15939-G, 2017 U.S. App. LEXIS 11782, at *8-9 (11th Cir. Mar. 28, 2017)

no call to decide which of the statutory alternatives was at issue in the earlier underlying conviction. [1] See, *Mathis*, supra, at 2256.

The "elements clause" expressly requires a particular kind of "element"—the use, attempted use, or threatened use of physical force against the person or property of another. *Curtis Johnson v. United States*, 559 U.S. 133, 139 (2010). And the law has long been clear that alternative means in a federal criminal statute are not alternative "elements." See *Richardson v. United States*, 526 U.S. 813, 817 (1999). Whether a crime is "within the ambit of 18 U.S.C. § 924(c) is a question the Court must answer 'categorically," by reference to the <u>elements</u> of the offense." *United States v. McGuire*, 706 F.3d 1333, 1336 (11th Cir. 2013)

Judge Mathis reasoned in Davenport, *supra*, that if the Eleventh Circuit's reasoning in *Saint Fleur* was wrong, **"then Mr. Davenport's § 924(c) sentence <u>may be</u> <u>unlawful."</u>**

In the case of *In re Saint Fleur,* 824 F.3d 1337 (11th Cir. 2016), the Eleventh Circuit panel, which included Judge Mathis, held that Hobbs Act robbery "has as an element the use, attempted use, or threatened use of physical force," 18 U.S.C. §924(c)(3)(A), without citing any caselaw or other authority on that crime. No categorical analysis was performed in that case.

However, *Saint Fleur* was decided in the unique context of an application for leave to file a second or successive § 2255 motion, and in that case, factually

speaking, as in Natson's case – the government proved *Saint Fleur* committed a crime of violence at trial. When *Davenport* was decided, Circuit Judge Mathis opined that the Eleventh Circuit had not held that published decisions in the context of applications to file second or successive motions have precedential effect upon the Eleventh Circuit. See *In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015) and *Davenport v. United States*, No. 16-15939-G, 2017 U.S. App. LEXIS 11782, at *3 (11th Cir. Mar. 28, 2017).

Judge Mathis correctly criticizes the analysis in *Saint Fleur*, and he is not the only one. Sherardizing *Saint Fleur* there are countless decisions at the District Court level, from around the Circuit, and several at the Eleventh Circuit where Defendants have attacked application of the elements clause of 18 U.S.C. § 924(c)(3)(A) by pointing out the inadequate nature of the declaratory unsupported statement made by the *Saint Fleur* panel that Hobbs Act Robbery is categorically a "crime of violence." Many District Courts have agreed with the various Defendants who have challenged their convictions, commended them for their arguments, but have ultimately noted that they are bound by precedent in *Saint Fleur*. The Eleventh Circuit has repeatedly cited *Saint Fleur* as precedent, sometimes acknowledging the truth, as in *Davenport*, that it may have been incorrectly decided, and in other cases declaring that "it has been decided" by *Saint Fleur* as if the case is the basis of some sort of religion rather than based on legal acumen in application of the necessary

categorical analysis or well decided and settled law. See *United States v. Duhart*, 803 F. App'x 267, 271 (11th Cir. 2020).

Undersigned counsel means no disrespect to any of these courts or the judiciary, but sometimes logic and reason and proper application of the law must trump stubborn dogma, especially in the case of now apparently binding precedent issued dealing with whether successive § 2255 filings may be filed.

The District Courts must follow precedent. The problem with the Eleventh Circuit's decision process on Hobbs Act Robbery over the years since *Saint Fleur* is also perfectly described in this quote from the Southern District of Florida:

"The Court notes that *Saint Fleur* wholly fails to conduct the requisite analysis under *Taylor* and its progeny for determining whether Hobbs Act robbery in fact still qualifies after *Johnson.* See Scalia, Antonin, J., The Rule of Law as a Law of Rules, 56 U. Chi. L. Rev. 1175, 1177 (1989)(lower courts are not only bound by the narrow "holdings" of higher court decisions, but also by their "mode of analysis"). Here, movant argues that if this Court conducts the proper analysis, it will conclude that substantive Hobbs Act robbery does not qualify as a crime of violence for purposes of §924(c). **That may well be true.** The problem is that it would be futile for the Court to conduct any such analysis, because the Eleventh Circuit has already decided the issue in *Saint Fleur*."

See *Doster v. United States,* No. 16-22677-CIV-MOORE, 2018 U.S. Dist. LEXIS 34526, at *32-33 (S.D. Fla. Mar. 1, 2018) (Emphasis Added)

This stubborn belief[6] and reliance on *Saint Fleur* by the Eleventh Circuit, see *Duhart,* supra, and similar progeny as well as decisions lodged in other circuits based on similar precedents (*See United States v. Gooch*, 850 F.3d 285, 2017 WL 816882, at *5 (6th Cir. 2017); *United States v. Buck*, 847 F.3d 267, 275 (5th Cir. 2017);

---

[6] An apparent religion in this Circuit, not based in reason, but on faith in the precedent of prior panel dicta alone.

*United States v. Anglin*, 846 F.3d 954, 965 (7th Cir. 2017); *Hill*, 832 F.3d at 139-144; *United States v. House*, 825 F.3d 381, 387 (8th Cir. 2016); *United States v. Howard*, 650 F. App'x 466, 468 (9th Cir. 2016).*,* permeates the circuits and does in fact fly in the face of the analysis required to be undertaken as mandated by the decision in *United States v. Taylor*, 142 S. Ct. 2015, 2024 (2022).

When one reads the decision in *Saint Fleur*, it is apparent that the Eleventh Circuit merely looked at the facts in the indictment as alleged and admitted by entry of Saint Fleur's guilty plea, rather than by arriving at the dicta utilized as precedent by conducting the required categorical analysis of the Hobbs Act Robbery statute. There was no jury charge given that impermissibly expanded the scope of Hobbs Act Robbery beyond the confines of §924(c)(3)(a). When that Eleventh Circuit panel stated that it was clear that Saint Fleur's Hobbs Act Robbery was a crime of violence under the elements clause of §924(c), it is doubtful that anyone on the panel realized that this passing comment would become the keystone for the entire circuit to ignore its duties under *United States v. McGuire*, 706 F.3d 1333, 1336 (11th Cir. 2013) and all other authority mandating same.

Many of these decisions relied upon by the various circuits seem to be brought about as a spontaneous reaction to shore up application of §924(c)(3)(a) before the residual clause would be struck down by attacks in the aftermath of *Curtis Johnson*

19

*v. United States*, 559 U.S. 133, 139 (2010).

The reluctance to adopt a categorical approach to Hobbs Act Robbery in the Eleventh Circuit mirrors the nationwide hesitation by the judiciary to finally acknowledge the vague application of the residual clause of the ACCA and of §924(C)(3)(B). Some in the government support the slow process of needed change in this regard because the acknowledgement of a wrongful application of the law, or failure to apply the categorical approach to Hobbs Act Robbery as opposed to only applying it to Attempted Hobbs Act Robbery or Conspiracy to Commit Hobbs Act Robbery supports the status quo rather than open the flood gates and welcome what will undoubtedly be an overwhelming deluge of §2255 motions. But many jurists and prosecutors have recognized the need to act when these issues arise.

Judge Martin, in his concurrent opinion in *Saint Fleur*, noted the following:

"For decades, courts across the country imprisoned people in a way that we know after *Johnson* is illegal. The Supreme Court has also told us that prisoners are entitled to benefit from *Johnson* regardless of when they were sentenced. *See Welch. United States*, 136 S. Ct. 1257, 1268 (2016). We owe these possibly wrongfully incarcerated people careful attention in deciding whether a district court can simply *look* at whether their sentence is wrong. Our court received about 600 *Johnson*-based § 2255(h) applications in the month of May alone. Nearly all those applications are *pro se*. Some were denied by split panels. And nearly all the orders in these cases are not published on our public website or in case reporters, which means no lawyer is likely to ever see them."

*In re Saint Fleur,* 824 F.3d 1337, 1344 (11th Cir. 2016)

It is a problem for any District Court that may want to entertain or engage in the required categorical analysis of the Hobbs Act Robbery statute, because the

20

Eleventh Circuit continues to throw down the gauntlet with *Saint Fleur*.

*In United States v. Grace*, 711 F. App'x 495, 503 (11th Cir. 2017), the Eleventh Circuit ruled that *Saint Fleur* is binding upon them unless the Appellant overturned this precedent *En Banc* or was able to reverse that precedent at the United States Supreme Court. It appears that the appellant in that case attempted to get the Supreme Court to consider the issue but was denied certiorari.

 Further compounding the issue, the Eleventh Circuit made *Saint Fleur* binding precedent in *United States v. St. Hubert*, 909 F.3d 335, 346 (11th Cir. 2018). Surely Natson had no hope at the time of his conviction or on appeal of raising this issue successfully on his own or prior to the decision in *Taylor*. Further, he was not in a position to perceive of such a challenge until the issuance of *United States v. Louis*, No. 21-CR-20252, 2023 U.S. Dist. LEXIS 32231, at *5-6 (S.D. Fla. Feb. 27, 2023) and appointment of counsel in this matter.

The Eleventh Circuit eventually held in *Brown v. United States*, 942 F.3d 1069, 1075 (11th Cir. 2019) that conspiracy to commit Hobbs Act robbery does not categorically qualify as a crime of violence under § 924(c)(3)'s elements clause. That panel discussed the Eleventh Circuit's previous reliance on *Ovalles v. United States*, 861 F.3d 1257 (11th Cir. 2017), which refused to apply the "crime of violence" definition found in the ACCA imposed by the decisions in *Curtis Johnson v. United States*, 559 U.S. 133, 139 (2010) to § 924(c)(3)(b)'s residual clause was

eventually abrogated by the opinion of the Supreme Court in *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019) after 19 years of resistance. Now, if narrowly construed as the Government suggests, *United States v. Taylor*, 142 S. Ct. 2015, 2024 (2022) stands for what was readily apparent if the Eleventh Circuit would have actually applied the categorical approach to Attempted Hobbs Act Robbery; respectfully, it is clear that the categorical approach has often been misapplied in this Circuit, in several areas,  requiring decades of litigation and appeals to finally achieve what the Supreme Court has now in plain language said must be done over and over again: *Courts must apply the categorical approach to Hobbs Act Robbery and every other federal felony under consideration for the elements clause of 924(c)*.

When one looks at the elements and means to commit Hobbs Act Robbery, the answer that must be faced is that the statute as written is not a categorical crime of violence for purposes of 924 (c).

I.    **Hobbs Act Robbery is not a Categorical crime of violence under 18 U.S.C. 924 (C) after trial and conviction predicated upon use of the Eleventh Circuit Pattern Jury instructions.**

The Eleventh Circuit Pattern Jury Instruction O70.3—given to the jury in the Natson trial—expanded the elements of Hobbs Act robbery,18 U.S.C. § 1951(a), to the extent that the offense was categorically overbroad relative to the elements

of 18 U.S.C. § 924(c)(3), which defines a "crime of violence" as required by § 924(c)(1)(A)(ii). See also Doc.

Accordingly, the Court does not have jurisdiction to issue judgment as to the categorically overbroad offenses, because such overbroad offenses are not "offenses against the laws of the United States" pursuant to 18 U.S.C. § 3231. As instructed, the jury was presented with a categorically overbroad Hobbs Act robbery offense, which allowed for the commission of Hobbs Act robbery by fear, defined as a state of anxious concern, alarm, or anticipation of harm. As instructed, fear included the fear of financial loss, at the time of the alleged crime or in the future, as well as fear of physical violence.

The jury instruction expanded the elements of a § 924(c)(3) crime of violence, which is an offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" by allowing the jury to convict Natson if he caused "fear of financial loss."

The actual underlying facts may be morally repugnant, and for purposes of this appeal, there is absolutely no controversy about what was proved at trial. In other words – the factual basis behind the conviction is not important to this appeal. Factually, Natson is guilty of Hobbs Act robbery and guilty of Possession of a Firearm during Commission of a crime of violence. This appeal attacks Count 3 only and the resulting final judgment and sentence which took Count 3 into

23

account, improperly in Natson's view, under a categorical analysis of either the statute as discussed above or the jury charges actually used at trial.

This Court and the Supreme Court follow a categorical approach when looking to see if 924 (c) is applicable in a given case. Thus, what is at issue is the categorical analysis that now must be implemented by this Court in the wake of Taylor (but should have already been implemented), whether Hobbs Act Robbery is truly a categorical crime of violence (under a true categorical analysis) rather than under the dubious reasoning that the panel from *In re Saint Fleur,* 824 F.3d 1337 (11th Cir. 2016) "says it is so" (the case was not even decided on those grounds), and finally and most interestingly whether the pattern jury charges for Hobbs Act Robbery remove a conviction for Hobbs Act Robbery from the purview and application of 924 (c). For after all, in a jury trial, unlike a guilty plea; the jury is charged on the means by which a Defendant may be convicted and the elements that must be proved. If those means and elements are broader and more expansive than the indictment and include theories of conviction that are not categorically crimes of violence, then 924 (c) cannot apply under the categorical analysis.

Specifically, the primary issue now being raised focuses on the jury instructions given to the jurors at the outset of their deliberations. The Court utilized the standard jury charges for Hobbs Act Robbery created by the Eleventh Circuit

24

at Natson's trial.[7]  The Charge is not erroneous on its face and although the Eleventh Circuit had warned District Courts to categorically review elements of an offense in the context of 18 USC 924(c)(3)(A), there are overbroad elements in the charge. The Problem arises with the definition of "Fear" and the definition of the underlying elements the jury must find under the pattern charge.  Under the Supreme Court's application of the categorical approach to Hobbs Act Robbery in conjunction with 18 USC § 924(c)(3)(A), Natson's conviction on Count 3 cannot stand.

Natson contends that the district Court had no jurisdiction to render judgment on his remaining conviction for 18 USC 924 (c)(3)(A) at his final sentencing hearing and at least one District Court in the Eleventh Circuit agrees after application of *Taylor* to an analogous situation in the Southern District of Florida on February 27th, 2023.[8]

That decision was immediately appealed to the Eleventh Circuit by the Government and remains pending but it should tellingly be noted that the Government abruptly moved to dismiss its appeal for "prudential" reasons but the reasoning of the District Court Judge in the Southern District of Florida is succinct and

---

[7] See Doc. 95 in this case.

[8] See *United States v. Louis*, No. 21-CR-20252, 2023 U.S. Dist. LEXIS 32231, at *5-6 (S.D. Fla. Feb. 27, 2023).

persuasive.  The government's motion to withdraw that appeal, despite their statement that they disagree with the Southern District of Florida Judge's decision, if granted by this Court, will permit the District Court's ruling to stand, and Defendant Louis will avoid decades of prison time that would otherwise be part of his debt to society under his sundry 924 (c) convictions.  The government's motion to dismiss its appeal in Eleventh Circuit case No.: 23-10643, obviously unopposed by Defendant Louis, who could care less about precedent and would like to be released from prison as soon as possible,   appears to be for the "prudential" reason of avoiding the floodgates of "Habeas hell" should The District Court for the Southern District of Florida and Victor Natson be correct about the outcome of a categorical analysis of the pattern charges in this Circuit for Hobbs Act Robbery.

"Habeas hell" may be repugnant to judicial economy and judicial law clerks everywhere, but to quote the motto of the Georgia Supreme Court as undersigned counsel often does, *"Fiat justitia ruat caelum."*

But as so often happens with this sort of thing, the flood cannot be held back forever and so here is yet another chance for the Eleventh Circuit to look at this important issue.  This time, the Government is merely the respondent and is not offended by the decision of the District Court.  The jury charges given probably would be fine had they been curtailed and fit to the elements and facts the Government was attempting to prove in the indictment.  However, the charge was

26

given with all elements and means and that is the problem; it is just overbroad when viewed under the categorical analysis necessary for application of 924 (c).

In *United State v. Louis*, the Defendant filed a pro se challenge to six convictions for 18 USC § 924(c) predicated on six Hobbs Act crimes. Appointed counsel later filed a Motion for Arrest of Judgment under Rule 12 (b) and Rule 34 pointing out the probably wide-spread issue created in the Eleventh Circuit by *United State v. Taylor*. The pattern charge on Hobbs Act Robbery defines fear of harm as not only violent harm or threat of physical harm, *inter alia*, but also "fear of present or future economic loss or harm." Threat of present or future economic harm would be suffered by a shoplifting victim or victim of a criminal trespass case who witnesses a stranger in his back yard. It may be the fear of a Hobbs Act Robbery victim but if the jury can convict on that type of fear vs. fear of physical threat or violence or physical harm, then the latter would qualify for application of 18 USC § 924(c) but not the former. Because such definitions cover all types of Hobbs Act crimes; the charged elements communicated to the jury were overbroad.

A successful robbery undertaken by the threat of present or future economic harm, i.e. "Give me the petty cash or I will come back and ask for more money next time!" or " If you don't give me all of the day's deposits I will post horrible things about your bank on the internet, thus causing harm to your brand!" would

27

not be crimes of violence or predicate acts that would confer jurisdiction to enter judgment on Count 3 or any crime pursuant to 18 USC § 924(c). Hobbs Act pattern charges talk about fear of present or future economic harm because the Hobbs act also encompasses crimes of bribery and extortion that affect interstate commerce. Those types of Hobbs act crimes are often not crimes of violence but mere economic crimes that do not implicate 18 USC § 924(c). The jurisdictional problem in light of *Taylor* and in *Davenport* is readily apparent. The jury instructions utilized at Natson's trial were too broad under the categorical analysis.

The underlying facts of the case do not affect the categorical analysis mandated by the Supreme Court. This Court must look to the face of the record and on this issue the face of the jury instructions as to Natson's pending resentencing and whether it continues to hold jurisdiction over Count 3. The jury instructions are overbroad and vitiate the verdict on Count 3 because the jury was authorized to convict whether Natson committed a crime of violence or a robbery that was successful because the victim merely feared economic loss of some nature at the time of the robbery or in the future. The Eleventh Circuit Pattern Jury Instruction O70.3—given to the jury in the Natson trial—expanded the elements of Hobbs Act robbery, 18 U.S.C. § 1951(a), to the extent that the offense was categorically overbroad relative to the elements of 18 U.S.C. § 924(c)(3), which defines a "crime of violence" as required by § 924(c)(1)(A)(ii).

28

Accordingly, the District Court did not have jurisdiction to issue judgment as to the categorically overbroad offenses, because such overbroad offenses are not "offenses against the laws of the United States" pursuant to 18 U.S.C. § 3231. As instructed, the jury was presented with a categorically overbroad Hobbs Act robbery offense, which allowed for the commission of Hobbs Act robbery by fear, defined as a state of anxious concern, alarm, or anticipation of harm. As instructed, fear included the fear of financial loss, at the time of the alleged crime or in the future, as well as fear of physical violence.

The jury instruction expanded the elements of a § 924(c)(3) crime of violence, which is an offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" by allowing the jury to convict Mr. Louis for "fear of financial loss as well as fear of physical violence" in addition to the "use, attempted use, or threatened use of physical force . . . " *Compare* § 924(c)(3), *with* 11th Cir. Pattern Jury Instruction O70.3. See *Curtis Johnson v. United States*, 559 U.S. 133, 139 (2010), defining a crime of violence in the context of the ACCA. See United States v. Taylor, 142 S. Ct. 2015, 2024 (2022), definitively defining a crime of violence under § 924(c)(3).

The government construes the *Taylor* decision narrowly in this regard in its reply brief and their position is in line with the Eleventh Circuit. Looking at the Hobbs Act Robbery statute, 18 U.S.C.S. § 1951, a categorical approach under the

elements clause fails because of the definitions, elements and means contained in the statute. Hobbs Act Robbery can be proved if a jury believes a Defendant caused fear of injury to property in the future. The property may be in the victim's custody or control. A store owner may have custody and control over the property in his bank account, or at his store, and a criminal may cause him fear that he could lose his customers or his store and thereby interfere with commerce by threatening to reveal a scandal if the store owner does not turn over the money he was going to send to an out-of-state supplier in lieu of exposure to public ridicule. The elements necessary to prove a Hobbs Act Robbery in that circumstance would not categorically require the government to prove a crime of violence under the elements clause of § 924(c)(3)(A).

Arrest of judgment is proper only where it appears upon the face of record that judgment cannot be legally entered. *United States v. Lias*, 173 F.2d 685, 1949 U.S. App. LEXIS 2886 (4th Cir. 1949).

Under Rule 12(b) a Defendant may bring a motion challenging the jurisdiction of the Court at any time while the case is pending. The case was pending before the District Court at the time Natson's objection and motion were filed. The District Court erred when it denied Natson's motion and overruled his objection to being sentenced on Count 3 of the Indictment.

To be fair to the District Court, this Court's precedent bound it to find that

Hobbs Act Robbery is always a crime of violence pursuant to *In Re Saint Fleur*, a case decided on other grounds that has been cited by this Court and all district Court's in the Circuit as the definitive categorical analysis of Hobbs Act Robbery when it is no such thing. A cursory reading shows that what was undertaken was a factual analysis and in any case the dicta relied upon by all progeny should not be the standard for this Circuit. If the Eleventh Circuit believes that the elements of Hobbs Act robbery are categorically a crime of violence under all factual scenarios under that statute then a case should be issued which undergoes a proper categorical analysis of those elements and it should be the standard bearer and not *In Re Saint Fleur*.

Further, the jury charge issue was erroneously decided by the district court. However, it was a novel issue and certainly Judge Wood was not bound by the persuasive decision of the Southern District of Florida in a similar case. It is conceded that from a purely factual analysis of what occurred and Natson's actual involvement – his convictions are proper. However, that is not the analysis that must occur. The government proved the indictment in this case. But even if this Court will not abandon *In Re Saint Fleur*, or at least what that case supposedly stands for, this Court must look at the expansive nature of the pattern jury charges and how those do not categorically fall within the purview of 924 (c).

The pattern jury charges used in this case are overbroad and Natson could

31

have been convicted under conduct charged to the jury which would not categorically be a crime of violence under 924 (c). We need not speculate about the basis for his conviction or crawl inside the minds of the jury. The categorical analysis controls, and since this was a jury trial, the categorical analysis of the jury charge controls. Thus, his conviction in Count 3 should be vacated and the case should be remanded for resentencing.

Natson is not challenging the sufficiency of the indictment to allege the proper elements that would comprise a violation of § 924(c). As discussed, the Eleventh Circuit has held that Hobbs Act Robbery is categorically a "crime of violence" but did so without conducting any categorical analysis and continues to follow that precedent since Saint Fleur. The Saint Fleur panel and nearly all cases on this issue deal with guilty pleas to Hobbs Act Robbery and 924 (c) entered contemporaneously.

As indicted, without new precedent overturning Saint Fleur, Count 3 was a proper count to go to the jury. Many Defendants have raised the issue of whether the Hobbs Act Robbery statute is categorically a crime of violence, some pre-trial, and some on Habeas, and this has increased in the wake of Taylor after Davis' abrogation § 924(c)(3)(B)'s "residual clause." Natson raises that question above.

All since 2016 have been unsuccessful in the Eleventh Circuit because of the Saint Fleur decision. However, use of the pattern jury charges for Hobbs Act

Robbery when charging the jury removed subject matter jurisdiction from the Court as to Count 3 because the elements and means charged to the jury comprise what the government must prove beyond a reasonable doubt to get a conviction. The jury decides the case with the charged elements and various means in mind. The jury is not read the Hobbs Act Robbery statute and does not decide the case on the statute. Much of the language from the charge is derived from the statute but the pattern charge elaborates on these concepts and describes many means and methods which do not require "violent force" and yet will still sustain a conviction.

The actual facts of the case or the facts relied upon by the jury are not relevant to the categorical analysis of the jury instructions which laid out the necessary elements and means of the offense of conviction in Count 2. The indictment in Count 2 is far narrower than the elements and means charged to the jury which were utilized to decide the case.

Looking at the jury charge actually used in this case (Doc. 195, pg. 11), Robbery is defined as follows:

> "Robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession or of anyone in his company at the time of the taking or obtaining.

33

Looking at the jury charge (Doc. 195, Pg. 11), Fear is defined as follows:

```
    "Fear" means a state of anxious concern, alarm, or
anticipation of harm. It includes the fear of financial loss as
well as fear of physical violence.
```

Looking at the jury charge (Doc. 195, pg. 13-14), the Court laid out the necessary elements of the crime in Count 2 for the jury:

```
(1) the Defendant knowingly acquired someone else's personal
property; (2) the Defendant took the property against the
victim's will, by using actual or threatened force, or violence,
or causing the victim to fear harm, either immediately or in the
```

```
                                13
```

```
future; and (3) the Defendant's actions obstructed, delayed, or
affected interstate commerce.
```

The Indictment in a nutshell lays out that Natson and the co-defendants took property by actual or threatened force, and violence, and fear of harm, and that such action obstructed, delayed or affected interstate commerce. If Natson had entered a guilty plea to Count 2 of the Indictment, Eleventh Circuit caselaw and precedent would control the outcome here. For a particularly interesting deep dive into pre-trial elements clause statutory attacks of Hobbs Act Robbery and how the District Courts in this Circuit have dealt with same, the Court is directed to *United States v.*

34

*Collins*, No. 1:14-CR-302-TWT-AJB, 2016 U.S. Dist. LEXIS 54816, at *78-82 (N.D. Ga. Feb. 9, 2016), then see *Wooten v. United States*, No. 16-22595-Civ-COOKE/TORRES, 2018 U.S. Dist. LEXIS 50969, at *12-21 (S.D. Fla. Mar. 26, 2018) (Notably, both decided before dispatch of the residual clause in Davis in 2019).

All roads lead to Saint Fleur, however, in apparent avoidance of deciding whether *Johnson* made the residual clause unconstitutionally vague.

Another interesting discussion of these issues occurs in United States v. Frazier, No. 2:15-cr-044-GMN-GWF, 2016 U.S. Dist. LEXIS 103388, at *9 (D. Nev. May 20, 2016), a District of Nevada case, citing to Collins, supra, and others, ultimately concluding that categorical analysis is not proper pre-trial but is proper post-trial per the instructions of the jury.

"Some offenses may be categorically crimes of violence, while others may be categorically not crimes of violence. That is, the commission of some crimes may always be violent while the commission of others may never be violent. In any event, the point here is that in this case the task of assessing whether the facts of the Hobbs Act robbery as alleged here fit the definition set forth in § 924(c)(3) belongs to a properly instructed jury. Specifically, in the case at bar, a jury would be instructed that defendant's commission of the Hobbs Act robberies alleged qualify as crimes of violence only if the jury finds that the government has proven beyond a reasonable doubt that the commission of the Hobbs Act robberies "ha[d] as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). To conclude otherwise—to conclude that the categorical approach applies and that a Hobbs Act robbery is not categorically a crime of violence for purposes of a motion to dismiss an indictment—would effectively eliminate § 924(c) offenses for cases where the predicate offense is a Hobbs Act robbery, even in the most violent of circumstances. This anomalous result is one that Congress clearly never anticipated or intended. In sum, the categorical approach does not apply on a pre-trial motion to dismiss an indictment, and therefore the question whether the commission of a particular Hobbs Act robbery qualifies as a § 924(c) crime of violence is properly submitted to a jury properly instructed as to the definition of a crime of violence set forth in § 924(c)(3)." Id.

35

But Natson did not in fact enter a guilty plea to Count 2 in this case and a jury utilized the Court's instructions to determine the outcome at trial. Under categorical analysis of the instructions given at his trial, Count 2 is not categorically a crime of violence. It is particularly unhelpful that the Court in Natson's jury charge also instructed the jury that Count 2 and Count 5 were "crimes of violence", thus, removing from their purview the necessary determination on Counts 3 and 6 of whether Count 2 or Count 5 had a necessary element the use, attempted use or threatened use of physical force against the person or property of another.

If the jury found that Natson took property merely by causing fear of injury in that the victim believed that their property may be harmed in the future, rather than by the means listed in the indictment; he did not commit a categorical crime of violence. However, the jury charge then instructed the jury that if they found Natson guilty of Count 2, under any of the instructed means,  that this was a crime of violence subjecting him to conviction on Count 3. However, under the fear of injury to property in the future type of means by which any of the jurors could have rested their decision; this conclusory pattern instruction was erroneous. The jury made no determination whether Count 2 had a necessary element the use, attempted use or threatened use of physical force against the person or property of another.

Even if the Court were to employ the modified categorical approach, which would be a questionable use on this elements clause issue, as opposed to how it was

developed to make determinations on prior convictions for use under the ACCA, and by using the Shepard documents, the indictment is contradicted by the jury instructions. The elements in the indictment state the taking was undertaken by use of violence and threat of violence and fear of injury, whereas the actual instructions as to Count 2 authorize the jury to convict if they find the taking was undertaken by violence or threat of violence, or fear of injury, now or in the future.

Fear is defined as physical harm or harm to property. Fearing harm to property in the future is not attempted force, use of force or threat of force. The jury instructions control the outcome of a jury trial and carry far more weight than any indictment at trial. The jury instructions are the rules of the road by which jurors make their decision.

The question before the Court is not whether the overbroad jury charge was confusing to the jurors or may have caused unfair prejudice in the result of the trial. That may very well have been the case, but as the Government points out, the Defendant would be hard pressed to meet his burden under a factual analysis of the evidence in light of the indictment in question.

The question raised here is jurisdictional in nature and focused on categorical analysis of the pattern jury charges used in Natson's trial and whether the jury could have convicted Natson of Hobbs Act Robbery without finding that a necessary element of the crime was "violent force" or a "crime of violence" as defined in

37

Taylor. The answer is yes. Per the Court's instructions to the jury, the jury was not required to find that a necessary element of the offense was "violent force," or a crime of violence under Taylor, in order to convict on Count 2. Thus, Count 2 as charged to and decided by the jury in Natson's trial is not a categorical "crime of violence."

There is no Eleventh Circuit precedent on this specific jury charge categorical analysis issue that would control the District Court's review of Natson's Motion below and no precedent to prevent this Court from undertaking the proper analysis. And as stated ad nauseum, at least one District Court in this circuit has found that it lacked jurisdiction to issue a sentence and judgment on Six § 924(c) counts that were procured with the same pattern jury instructions and did not find that the precedent in *Saint Fleur* prohibited it from ruling in the Defendant's favor.   The government appealed that decision but then moved to dismiss its appeal.

Below, the government argued that Natson's motion was untimely.  It should be noted in regard to the Government's timeliness argument, opining that Natson had ample opportunity to raise this issue before whether at trial, or on appeal, and failed to do so; that until United States v. Davis held § 924(c)(3)(B)'s "residual clause" to be unconstitutionally vague, prior counsel would have been remiss to attempt to attack the elements clause because his conviction for Count 2 would have fallen under the purview of the residual clause regardless of raising his current issue.

Prior counsel for Natson was not ineffective and would not be required and the Defendant is not required to raise issues that will fail on their face or be an exercise in futility. The residual clause was alive and well in this circuit until 2019 and the Judges of the Eleventh Circuit panels were equally loathe to abandon prior precedent in that regard in a similar fashion to what is occurring now with the elements clause on the issues of Hobbs Act Robbery.

When the jury is authorized to find Natson guilty if he interfered with interstate commerce and acquired property of another by means of "violent force" or by means of "fear of economic loss, then or in the future"; there is no way for this Court under the Categorical Analysis to determine which means the crime was found by the jury to have been committed. This is because under the Categorical Analysis, the facts in evidence do not matter; what matters is whether a necessary element is "violent force" such that no jury could convict Natson of Hobbs Act Robbery unless they found that "violent force" was a necessary element of the crime.

In hindsight, The Government could and should have moved the Court at trial to narrow the scope of the pattern jury instructions to conform to the facts as shown at trial. At the time, this may not have occurred to the Government or the Court, because Count 3 was still in play under the now defunct residual clause of § 924(c)(3)(B). However, neither Defense counsel nor the Government curtailed the broad scope of the pattern instructions on the necessary elements and possible means

39

by which Count 2 could have been proven under the pattern charge (which mostly comes directly from the Statute). A broad net catches more fish but becomes problematic for Categorical Analysis under the elements clause. The residual clause fixed any problems therein but the Supreme Court dispatched that provision in *Davis*. The jury convicted Natson in Count 2 and was authorized to do so if the robbery was undertaken by means of fear of economic loss at the time of the robbery or in the future. Hobbs Act Robbery by means of "fear of economic loss" is not a crime that requires an element of "violent force." Thus, his conviction in Count 2, cannot support Count 3 under the Categorical Analysis required for subject matter jurisdiction to attach to Count 3 for purposes of sentencing or for purposes of Count 3 "staying alive". It must be vacated and the case remanded for resentencing.

## Conclusion

Wherefore, Victor Natson prays that this Appeal be duly considered and the issues raised resolved in his favor. Natson prays that this Court find that his conviction under 924 (c) (Count 3 of the Indictment) should be vacated, his objection made below to being sentenced under 924 (c) should be sustained, and that this case be remanded for resentencing of the Defendant.

Respectfully Submitted this the 15th day of November, 2023.

/s/ J. Wrix McIlvaine
James Wrixam McIlvaine
Attorney for Natson
Georgia Bar No. 4369879

WILLIAMS LITIGATION GROUP
1709 Reynolds Street
Brunswick, Georgia 31520
TEL: (912) 208-3721
wrix@williamslg.com

40

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. Rule 32 (g) and specifically the type-volume limitation and in all respects complies with 11th Cir. R. 32 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32, this document contains 10, 425 words, or this brief uses a monospaced typeface and contain 886 lines of text (including footnotes).

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Mac version 16.76.1 in Times New Roman, Size 14 Font.

So certified this the 15th day of November, 2023,

*/s/ Wrix McIlvaine*
 James Wrixam McIlvaine
Attorney for Victor Natson
Georgia Bar No.: 436879

**WILLIAMS LITIGATION GROUP**
1709 Reynolds Street
Brunswick, Georgia 31520
(912) 208-3721
wrix@williamslg.com

41

## CERTIFICATE OF SERVICE

This OPENING BRIEF OF APPELLANT and corporate disclosure statement was filed today through this Court's ECF system, and thereby served on appellee United States of America, by serving Assistant United States Attorney Justin Davids at his Court-registered e-mail address, pursuant to Fed. R. App. P. 25(c)(1)(C) and 25(c)(2), and 11th Cir. R. 25-3(a) by way of the Court's online electronic filing system.  Additionally, four hard copies of this filing have been mailed to the Eleventh Circuit Court of Appeals contemporaneously by way of Federal Express with the electronic filing of this document .

This 15th day of November, 2023.

Respectfully submitted,

*/s/ Wrix McIlvaine*
 James Wrixam McIlvaine
Attorney for Victor Natson
Georgia Bar No.: 436879

WILLIAMS LITIGATION GROUP
1709 Reynolds Street
Brunswick, Georgia 31520
(912) 208-3721
wrix@williamslg.com

42